## UNITED STATES DISTRICT COURT

## FOR THE DISTIRCT OF NEW MEXICO

|  |  |
|---|---|
| YVONNE BELANGER, individually and on behalf of other similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br>ALLTATE FIRE AND CASUALTY INSURANCE COMPANY;<br>ALLSTATE INDEMNITY INSURANCE COMPANY;<br>ALLSTATE INSURANCE COMPANY;<br>ALLSTATE ASSURANCE COMPANY;<br>ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY; and ALLSTATE NORTHBROOK INDEMNITY COMPANY<br><br>        Defendants. | **No. 19-cv-00317-WJ-SCY** |

## SECOND AMENDED CLASS ACTION COMPLAINT

1.      Plaintiff Yvonne Belanger, for herself and on behalf of the Class and Subclass defined herein, brings this Class Action Complaint to recover damages from Allstate Fire and Casualty Company, Allstate Indemnity Insurance Company, Allstate Insurance Company, Allstate Assurance Company, Allstate Property and Casualty Insurance Company, Allstate Vehicle and Property Insurance Company, and Allstate Northbrook Indemnity Company (collectively "Defendants") and states as follows:

### PARTIES

2.      Plaintiff Yvonne Belanger is, and was at all material times, a resident of Bernalillo County, New Mexico.

3.      Defendant Allstate Fire and Casualty Insurance Company is a foreign for-profit corporation conducting business, including marketing and sale of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

4.      Defendant Allstate Indemnity Insurance Company is a foreign for-profit corporation conducting business, including marketing and sale of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

5.      Defendant Allstate Insurance Company is a foreign for-profit corporation conducting business, including marketing and sale of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

6.      Defendant Allstate Assurance Company is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

7.      Defendant Allstate Property and Casualty Insurance Company is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

8.      Defendant Allstate Vehicle and Property Insurance Company is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of

insurance policies, throughout the State of New Mexico. Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

9.    Defendant Allstate Northbrook Indemnity Company is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico. Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

10.    Defendants worked together as a joint venture to sell automobile policies to New Mexico residents, including Ms. Belanger and others similarly situated. They are jointly and severally liable for the acts and resulting damages contained herein.

11.    Defendants publicly display the companies affiliated with Defendants (which self-identifies as "Allstate") on its website, Allstate.com. The website lists the names of its underwriters and affiliates: Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company.[1]

12.    Defendant Allstate Vehicle and Property Insurance Company operates as a subsidiary of Defendants Insurance Company. [2]

13.    Defendant Allstate Northbrook Indemnity Insurance Company operates as a subsidiary of Defendants Insurance Company.[3]

---

[1] *See* https://www.Defendants.com/about/name-location.aspx.
[2] *See* https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapid=26002172.
[3] *See* https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=26003064.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction under 28 U.S.C. §§ 1332 (a) and 1332(d)(2).

2.     Venue is proper under 28 U.S.C. § 1391(b)(2) or, in the alternative, 28 U.S.C. § 1391(b)(3).

3.     Defendants are real parties in interest and proper parties to this action.

4.     This Court has personal jurisdiction over the Defendants. The acts complained of herein occurred in the District of New Mexico.

## FACTUAL ALLEGATIONS

**Belanger purchased an underinsured motorist policy from Defendants.**

5.     In 2014, Defendants issued Belanger a motor vehicle insurance contract, which she had applied for and purchased. *See* Ex. 1, Belanger App and Ex. 2, Belanger Declarations Page and Exhibit 3, Policy.

6.     The policy that Defendants issued and which was in effect at the time of Belanger's loss was Policy No. 829 720 835, effective from July 1, 2014 to January 1, 2015 ("Belanger Policy"). *Id.*

7.     The Belanger Policy provided liability coverage on one vehicle in the amount of $100,000 per person/$300,000 per accident, per vehicle. *Id.*

8.     Although Mrs. Belanger had the option to purchase UM/UIM coverage up to limits equal to the level of her bodily injury limits, or $100,000, Defendants obtained a written rejection without properly informing Ms. Belanger that the selection of underinsured coverage at minimal limits would have extremely limited to no value.

9.     The Belanger Policy also purportedly provided uninsured and underinsured motorist coverage in the amount of up to $25,000.00 per person/$50,000.00

per accident, per vehicle. *Id.*

10.    Defendants collected a premium of $65 for the uninsured and underinsured motorist coverage that Defendants purportedly offered for the sixth months from July 1, 2014 to January 1, 2015. *Id.*

11.    Defendants collected from Belanger premiums for uninsured and underinsured motorist coverage that it purportedly sold her since 2014.

**Defendants' systematic application process, declarations, UM/UIM information, selection forms, and policy are ambiguous and misrepresented the true value of underinsured motorist coverage and failed to adequately disclose to Belanger that the underinsured motorist coverage for which she had paid a premium was illusory and misleading.**

12.    Defendants' boilerplate forms which allow insured to select or reject Uninsured and Underinsured Motorists Coverage do not adequately disclose "Underinsured Motorist", See Ex. 1-3.

13.    Defendants' boilerplate forms which allow insureds to select or reject Uninsured and Underinsured Motorists Coverage are ambiguous and do not in any manner refer to the New Mexico statute, NMSA 66-5-301(B). Id.

14.    Defendants' policy booklet only contains a section titled "Part 5 – Uninsured Motorists Insurance – Coverage ST". See Exhibit 3.

15.    Plaintiffs and any other typical insured can easily understand an "uninsured motorist" is a motorist who has no liability insurance.

16.    Defendants' boilerplate forms and ambiguous policy definitions failed to properly inform Ms. Belanger about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) ("the *Schmick* offset"), and did not meet her reasonable expectations of being properly insured in the event she sustained

significant injuries. See *GREGORY CRUTCHER, individually & on behalf of other similarly situated individuals, Plaintiff, v. LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY PERSONAL INSURANCE COMPANY, FIRST NATIONAL INSURANCE COMPANY OF AMERICA, SAFECO INSURANCE COMPANY OF AMERICA, & SAFECO NATIONAL INSURANCE COMPANY, Defendants.*, 2021 WL 4520651, at 1 (N.M. Oct. 4, 2021). "We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit."

17.     Nothing in Defendants' boilerplate forms advise an insured that they may never receive the full amount of underinsured motorist coverage for which they have contracted. Id.

18.     When Belanger purchased automobile coverage, Defendants did not properly inform her of how underinsured motorist coverage is illusory in the event of a covered occurrence involving an underinsured driver.

19.     Defendants failed to properly inform Belanger that she would not benefit from the purchase of underinsured motorist coverage.

20.     Defendants failed to properly inform Ms. Belanger that she and insured beneficiaries would most likely not benefit from paying a premium for underinsured motorist coverage that was equal to the amount of a tortfeasor's liability coverage because, pursuant to the *Schmick* offset, Ms. Belanger's and insured beneficiaries' recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage. See *Id* at 6. "We refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule

derived by its technical language."

21.    Defendants' insurance contract did not contain clear, unambiguous language regarding the effects of the *Schmick* offset and the insurance contract is ambiguous.

22.    Defendants' systematic processes and forms did not alert Ms. Belanger, nor make clear to ordinary and similarly situated insureds, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for crashes involving underinsured motorists. See *Id*.

23.    Defendants' systematic processes and forms did not alert Ms. Belanger that she would be billed a premium for underinsured motorist coverage on a policy, where there was no likelihood of her and her insured beneficiaries ever being able to recover the full amount of underinsured motorist coverage for which he was billed and unable to collect any underinsured motorist coverage for which Defendants collected a premium.

24.    Defendants' systematic processes and forms misrepresented the true value of the illusory underinsured motorist coverage that it advertised and sold to Ms. Belanger and for which Defendants collected premiums. See *Id* at 6. "First, we find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels. The Court in *Weed Warrior* concluded that it was the obligation of the insurance company to clearly provide its policyholders the opportunity to match their UM/UIM policy with their liability coverage. *Id.* ¶ 15. In this case [*Crutcher*], we are simply identifying the same consequence previously illuminated in *Weed Warrior*. *Id.* ¶ 10.) and *Id* at 7. If a person pays for something

called "underinsured motorist" insurance, we think it reasonable for the person to be under the impression that he or she is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the costs of the insured's injuries."

**Belanger was injured in a collision with an underinsured motorist.**

25.    On September 4, 2015, Belanger sustained bodily injuries and other damages arising from an automobile crash that occurred on Central Ave. in Albuquerque, NM, when an underinsured motorist violently rear-ended the vehicle she was in.

26.    Belanger was not at fault for the crash and was wearing her seatbelt at the time.

27.    At the time of the collision, Belanger was abiding by Albuquerque and New Mexico traffic laws.

28.    As a result of the collision, Belanger was transported to Presbyterian Hospital by ambulance, and she suffered serious bodily injuries and other damages.

29.    Belanger suffered total damages well in excess of $50,000.00.

30.    At the time of the collision, Belanger was insured by the Belanger Policy, which provided her with uninsured and underinsured motorist insurance coverage in the amount of up to $25,000.00 per person/$50,000.00 per accident.

31.    After the collision, Belanger made a claim with the tortfeasor's insurer and received $25,000, the full extent of liability coverage from the tortfeasor's insurer.

32.    Like Belanger, the tortfeasor also carried the minimum required liability insurance with limits of $25,000.00 per person, $50,000.00 per accident.

**Belanger makes a claim that Defendants deny.**

33.    Before the collision at issue, Defendants collected a premium for

automobile coverage pursuant to the Belanger Policy, under which Belanger had a reasonable expectation that she carried underinsured motorist coverage of $25,000.00 per person, $50,000.00 per accident.

34.    At the time of the collision, Belanger was under the belief and had a reasonable expectation that she was entitled to underinsured motorist benefits pursuant to the application she had made and the insurance policy that Defendants had issued her.

35.    After the collision, Belanger reported the collision to Defendants and, through counsel, made a claim on the underinsured motorist coverage for which she had paid a premium.

36.    Defendants, under a standardized business practice, opened a claim, assigned claim number 0339658345, and randomly assigned the adjustment of the matter to one of its adjusters. Ex. 4, Defendants' Denial of Belanger's Claim.

37.    Belanger, through counsel, requested Defendants provide her with the underinsured motorist benefits that Defendants contracted with Belanger to provide and for which she had paid a premium. Ex. 5, Belanger's June 15, 2018 letter.

38.    Defendants denied Belanger's underinsured motorist coverage claim in its entirety. *See* Ex. 4.

39.    Defendants denied Belanger's claim because (i) Defendants deducted from the coverage they owed Belanger any sums paid by the tortfeasor's insurer and (ii) the tortfeasor's liability coverage limits equaled Belanger's underinsured motorist coverage limits. *See id.*

40.    Belanger received nothing from Defendants, her underinsured motorist policy carrier.

41.    Belanger had a reasonable expectation that she would benefit from the insurance premiums Defendants collected from her. In fact, however, under her policy there were virtually underinsured motorist benefits and Defendants paid her nothing.

## CLASS ACTION ALLEGATIONS

42.    This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) from whom Defendants collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide underinsured motorist coverage on the face of its application and declaration pages, but which effectively provides no underinsured motorists coverage and/or misleading underinsured coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

43.    Excluded from the Class are all of Defendants' present and former officers and directors, "Referees" serving the Evaluation Appeal process proposed below, Class counsel and their resident relatives, and Defendant's counsel of record and their resident relatives.

44.    Pursuant to Rule 1-023(C(4(b, the Class properly includes a Subclass:

> All Class Members (and their heirs, executors, administrators, successors, and assigns from whom Defendants collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage and/or misleading underinsured coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092  (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available and would be or were denied those benefits by Defendants due to the *Schmick* offset.

45.    The proposed class and subclass definitions are precise, objective, and presently ascertainable, and it is administratively feasible for the Court to ascertain whether a particular individual is a member of the Class.

46.    The members of the Class are so numerous that joinder of all members of the Class is impracticable.

47.    Belanger's claims are typical of the claims of members of the Class and Subclass.

48.    Certification of the Class and Subclass is desirable and proper, because there are questions of law and fact in this case common to all members of the Class. Such common questions of law and fact include, but are not limited to:

a.    Whether Defendants breached contractual obligations owed to their New Mexico policyholders;

b.    Whether Defendants breached duties owed to New Mexican insureds under the implied covenant of good faith and fair dealing;

c.    Whether Defendants violated NMSA 1978, §§ 59A-16-1 to -30;

d.    Whether Defendants failed to disclose one or more material facts in connection with the marketing or sale of the insurance policies at issue;

e.    Whether Defendants misled or deceived their policyholders in connection with the marketing or sale of the policies at issue;

f.    How properly to construe Defendants' standard application forms and other standard form documents relative to the *Schmick* offset;

g.    What remedies are available to Belanger and Class Members in light of the answers to the foregoing questions; and

h.     Whether and to what extent there may be merit in any affirmative defenses that Defendants might claim.

49.     These common questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. In this action:

50.     Common or generalized proof will predominate with respect to the essential elements of the nine claims at issue.

51.     The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

52.     If any member or members of the Class has an individually controlling interest to prosecute a separate action, they may exclude themselves from the Class upon receipt of notice under Rule 1-023(C)(2).

53.     The determination of the claims of all members of the Class in a single forum and in a single proceeding would be a fair, efficient and superior means of resolving the issues raised in this litigation.

54.     Any difficulty encountered in the management of the proposed Class is reasonably manageable, especially when weighed against the impossibility of affording adequate relief to the members of the Class through numerous independent actions.

55.     The need for proof of Belanger's and Class Members' damages will not cause individual issues to predominate over common questions. The amounts of losses can be efficiently demonstrated either at trial or as part of routine claims administration

through accepted and court-approved methodologies with the assistance of court-appointed personnel, including Special Masters. Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

56.    The particular common issues of liability and the quantum of punitive damages or ratio of punitive damages to actual harm, are common to Class Members no matter what type of harm or injury was suffered by each Class Member.

57.    Defendants has acted or refused to act on grounds generally applicable to Class Members, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to Class Members. Belanger seeks to establish the rights and obligations of  the parties with respect to the claims at issue in this case and to enjoin Defendants from continuing to engage in those practices that violate the duties, contractual, and legal obligations owed to Belanger and Class Members under New Mexico statutory and common law.

58.    A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery. The prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial

economy, the rights of each Class Members, should that be determined to be appropriate.

59. The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due process requirements.

60. Certification of the Class with respect to particular common factual and legal issues concerning liability, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Rule 1-023.

61. Certification of the Class is desirable and proper, because Belanger will fairly and adequately protect the interests of the Class that they seek to represent. There are no conflicts of interest between Belanger's claims and those other members of the Class. Belanger is cognizant of their duties and responsibilities to the Class. Belanger's attorneys are qualified, experienced, and able to conduct the proposed class action.

## CLAIM 1 - NEGLIGENCE

62. Belanger and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

63. Defendants had a duty to ensure Belanger and Class Members would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory and/or misleading underinsured coverage.

64. Defendants had a duty to provide Belanger and Class Members coverage for which a premium was charged and collected.

65. Since the issuance of the New Mexico Supreme Court's opinion of *Schmick* in 1985 it was reasonably foreseeable that the underinsured coverage sold Ms.

Belanger and Class Members was illusory and/or misleading and Defendants therefore materially misrepresented the terms and benefits of underinsured coverage, yet charged a premium for such illusory and/or misleading coverage.

66.     A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and/or misleading and would not materially misrepresent the terms of underinsured coverage by properly informing its insured of the coverage they were purchasing and obtaining a written waiver acknowledging its insured consent to the purchase of illusory and/or misleading underinsured motorist coverage.

67.     A reasonably prudent insurer would not charge a premium for coverage it intended to deny or did not provide.

68.     Defendants' actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

69.     As a result of Defendants' negligence, Belanger and Class Members sustained actual damages for which Defendants is liable. Belanger and Class Members are entitled to punitive damages for actions of Defendants that were willful, reckless and wanton, and in bad faith and based on dishonest business judgment.

## CLAIM 2 - VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

70.     Belanger and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

71.     There was in effect, at all times material, a New Mexico statute commonly

known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57-12-2 to 58-12-10 ("UPA"), including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and Section 57-12- 2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D.  "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
> > (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;
> >
> > (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;
> >
> > (15) stating that a transaction involves rights, remedies or obligations that it does not involve;
> >
> > (17) failure to deliver the quality or quantity of goods or services contracted for;
>
> E.  "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment: takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received by a person and the price paid.

72.      Defendants failed to deliver the quality or quantity of services applied for and purchased and paid for by Belanger and other insureds by failing to provide insurance applications and policies containing sufficient information to adequately disclose to a

reasonably prudent person purchasing underinsured insurance, for which Belanger and others similarly situated were under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by Defendants.

73.    In the regular course of its business, Defendants or its agents knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico.

74.    These ambiguous, false, and misleading representations may, tend to, and do deceive or mislead persons into believing that minimal-limits underinsured motorist coverage has a value that it does not have and into contracting for and paying premiums for underinsured motorist policies that are illusory and/or misleading and do not provide the underinsured motorist coverage and benefits that Defendants' customers reasonably expected to receive.

75.    In the regular course of its business, Defendants or its agents took advantage of its customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for illusory and/or misleading underinsured motorist coverage.

76.    Since the New Mexico Supreme Court's opinion in *Defendants Northwest Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, Defendants has been on notice that underinsured motorist policies provide essentially no coverage at minimal limits and misleading coverage at higher limits, yet Defendants markets, advertises, sells, and received premiums for minimal limits and above-minimal limits underinsured motorist policies to and from customers, such as Belanger and Class Members, who do not know and do not understand that, if they purchase minimal limits

underinsured motorist coverage, they are vanishingly unlikely to receive any underinsured motorist coverage or that if they  purchase above-minimal limits and suffer damages in excess of the tortfeasor's liability coverage, they would only be able to receive limited underinsured motorist coverage in excess of the amounts received from the tortfeasor, losing the full benefit of their above-minimal limits coverage because of the Schmick offset.

77.     Defendants' actions resulted in a gross disparity between the value of the illusory underinsured motorist coverage received by Belanger and Class Members and the price of the premiums that Belanger and Class Members paid for illusory and/or misleading underinsured motorist coverage.

78.     Defendants, acting through its agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12- 2(E).

### CLAIM 3 - VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT

79.     Belanger and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

80.     There was in effect at all times material a New Mexico statute commonly known as the Insurance Code New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA").

81.     The UIPA provides a private right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that statute by an insurer or

agent is granted a right to bring an action in district court to recover actual damages.

82.    Belanger and Class Members were insured under the policy issued and adjusted by the Defendants.

83.    Defendants owed Belanger and Class Members the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

84.    In the sale and provision of insurance, and in the handling of the underinsured motorist claim, Defendants failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of Belanger and of Class Members the same consideration it gave their own interests.

85.    Defendants' failure to pay anything on Belanger's and Class Members' first $25,000.00 level of underinsured motorist claims was unfounded, unreasonable, and in bad faith.

86.    Defendants misrepresented the terms of the policy sold and provided to Belanger and Class Members, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading and failed to implement and follow reasonable standards in the sale and provision of insurance.

87.    Defendants' acts and failures to act were in reckless disregard of Belanger's and Class Members' rights as an insured under the subject policy.

88.    Defendants' acts and practices took advantage of the lack of knowledge and experience of Belanger and Class Members to a grossly unfair degree.

89.    Defendants failed to abide by its statutory duties under the UIPA, and such violations constitute negligence per se.

90.    Defendants misrepresented to Belanger and Class Members pertinent facts

or policy provisions relating to coverages at issue, in violation of NMSA 1978, § 59A-16-20(A).

91.    Defendants compelled Belanger and Class Members to institute litigation to recover amounts due under the policies by offering substantially less (i.e., nothing on the first level of $25,000.00 of UIM coverage withheld based on the *Schmick* offset) than the amounts claimed by Belanger and Class Members that will ultimately be recovered in actions brought by Belanger, in violation of NMSA 1978, § 59A-16-20(G).

92.    Defendants' failure to act in good faith and Defendants' violations of the Insurance Code and Unfair Practices Act are proximate causes of damages sustained by Belanger and Class Members.

93.    Defendants' conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Belanger's and Class Members' rights.

94.    Belanger and Class Members are entitled to attorneys' fees and costs pursuant to NMSA 1978, §§ 59A-16-30 and 39-2-1. As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating UIPA, as set forth above, Belanger and Class Members have sustained damages, in addition to the damages common to all counts of this complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## CLAIM 4 - REFORMATION OF INSURANCE POLICY

95.    Belanger and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

96.     Belanger and similarly situated Class Members mistakenly believed that, by paying a premium for specific dollar amounts and limits of underinsured motorist coverage, they would receive underinsured motorist coverage at those same specific dollar amounts and limits.

97.     Defendants and its agents knew that, because of the operation of the offset described in *Schmick*, Belanger and similarly-situated Class Members were unlikely to receive the underinsured motorist benefits that they contracted for and for which Defendants collected premiums.

98.     At the time of contract formation, Defendants and its agents ambiguously and inequitably misrepresented the value of underinsured motorist coverage and failed to inform Belanger and similarly-situated Class Members that, because of the operation of the offset described in *Schmick*, they were unlikely to receive the underinsured motorist benefits that they contracted for and for which Defendants collected premiums.

99.     The inequitable failure of Defendants and its agents to inform Belanger and similarly-situated Class Members that they were unlikely to receive the underinsured motorist coverage caused Belanger and similarly-situated Class Members to believe that, by paying a premium for underinsured motorist coverage, they and their covered insureds would have available the full amount of underinsured motorist coverage reflected on their declaration pages.

100.    The insurance contracts respectively entered between Defendants and its agents, on the one hand, and Belanger and Class Members, on the other hand, do not express the intentions and reasonable beliefs of Belanger and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which

Defendants collected premiums.

101.    The court should reform the ambiguous insurance contracts respectively entered between Defendants and its agents, and Belanger and Class Members, to conform to the intentions and reasonable beliefs of Belanger and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which Defendants collected premiums.

## CLAIM 5 - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

102.    Belanger and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

103.    A special relationship exists between Defendants, on the one hand, and Belanger and Class Members, respectively, on the other hand, sufficient to impose a duty of good faith and fair dealing on Defendants owed to Belanger and Class Members.

104.    Implicit in the contract of insurance between Belanger and Class Members, on the one hand, and Defendants on the other was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Belanger and Class Members.

105.    Defendants breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

a.    Failing to adequately disclose to Belanger and Class Members the illusory and/or misleading coverage it solicited and sold;

b.    Charging a premium for coverage that was not provided;

106.    As a direct and proximate result of Defendants' acts and omissions alleged herein, Belanger and Class Members have suffered damages in an amount to be proven at

trial.

107.     Defendants' acts and omissions alleged herein and breach of the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly and/or with reckless disregard for the rights of Belanger and Class Members.

108.     Accordingly, Belanger and Class Members are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish Defendants for its misconduct and to deter others from similar conduct in the future.

## CLAIM 6 – NEGLIGENT MISREPRESENTATION

109.     Belanger and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

110.     A special relationship existed between Defendants, Ms. Belanger and Class Members, sufficient to impose a duty on Defendants to disclose accurate and unambiguous information to Ms. Belanger and Class Members.

111.     As early as 1985, when the New Mexico Supreme Court published its decision in *Schmick v. State Farm*, Defendants knew that underinsured motorist coverage would be illusory and/or misleading under most ordinary circumstances.

112.     Defendants however, withheld this information from Ms. Belanger and Class Members and hid from them the fact that the underinsured motorist coverage as impacted by the *Schmick* offset is illusory and/or misleading in its effect.

113.     From 1985 through the present, Defendants failed to adequately disclose material facts, made material misrepresentations, and otherwise used ambiguous insurance contracts regarding illusory and/or misleading underinsured motorist coverage.

114.     Defendants by their failures and omissions, misrepresented underinsured

motorist coverages through their standard and uniform insurance contracts given to Ms. Belanger and Class Members, which Defendants knew or should have known, were misleading and contained material misrepresentations.

115.    Defendants' material omissions and misrepresentations were made to induce Ms. Belanger and Class Members to purchase underinsured motorist coverage that Defendants knew or should have known was illusory and/or misleading.

116.    Ms. Belanger and Class Members objectively relied on Defendants' material omissions and misrepresentations when deciding to purchase underinsured motorist coverage at the level of coverage they respectively purchased.

117.    As result of Defendants' misrepresentations, omissions and ambiguous insurance contracts, Defendants are liable to Ms. Belanger and Class Members for their damages flowing from those misrepresentations, omissions, and ambiguous insurance contracts.

118.    As direct and proximate result of Defendants' negligent misrepresentations, Ms. Belanger and Class Members suffered economic loss, including the payment of premiums for coverage that had no value. Ms. Belanger and Class Members seek the full measure of damages allowed under applicable law.

## CLAIM 7 – UNJUST ENRICHMENT

119.    Belanger and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

120.    Defendants have applied the *Schmick* offset to its insureds' claims and denied underinsured motorist coverage benefits in New Mexico since 1985. Defendants, through its ambiguous insurance contracts, have misled, deceived, and acted in an unfair

manner for decades and retained benefits (*i.e.* the payment of UIM claims, and retained premium charges which were unearned) from thousands of New Mexican insureds for years, including Ms. Belanger and Class Members. The windfall Defendants received allowed them to invest and enjoy the benefits of their deceptive and intentional conduct.

121.    Ms. Belanger and Class Members are entitled to the value of the UIM benefits and out-of-pocket damages under the equitable theory of unjust enrichment.

122.    Defendants should be ordered to disgorge of the value of the UIM benefits retained, the UIM premiums received, and the unjust profit that it derived from.

## CLAIM 8 - DECLARATORY JUDGMENT

123.    Belanger and Class members incorporate by reference the preceding paragraphs as though they were stated fully herein.

124.    An actual controversy exists between the parties thereby rendering declaratory relief proper under the New Mexico Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 through 44-6-15.

125.    The Court should reform the insurance contracts respectively entered between Defendants and their agents, and Ms. Belanger and Class Members to conform to the intentions and reasonable beliefs of Ms. Belanger and Class Members that they would receive the underinsured motorist coverage that they contracted for and for which Defendants collected premiums.

126.    Belanger and Class Members are entitled to a declaratory judgment establishing their respective rights and obligations of the parties with respect to the claims set forth herein.

## INJUNCTIVE RELIEF

127.     Belanger and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

128.     Belanger and Class Members are entitled to injunctive relief under the claims they have pled because Belanger and Class Members would suffer an irreparable injury that monetary damages at a later time would not adequately compensate them for the injury of paying a premium for illusory and/or misleading coverage.

129.     Defendants should be enjoined from continuing practices that violate the duties, and contractual legal obligations owed to Belanger and Class Members.

130.     Defendants must be compelled to stop their practice of collecting premiums for the sale of illusory and/or misleading underinsured motorist coverage and failing to provide underinsured motorist coverage benefits equal to the limits of liability coverage where they failed to properly inform Belanger and Class Members throughout the application and policy underwriting process.

## REQUEST FOR RELIEF

Belanger and Class Members request a jury trial and the following relief:

i.     An order certifying this action to proceed as a class action, authorizing Belanger and to represent the interests of the Class Members as appropriated and appointing undersigned counsel to represent the class.

ii.     Awarding compensatory damages to Belanger and Class Members for the damages done to them by Defendants in an amount to be proven at trial;

iii.     Awarding Belanger and Class Members damages from Defendants as a

result of its violations of the UIPA, in an amount to be determined at trial for attorneys' fees and costs;

iv. Awarding disgorgement of the value of the underinsured motorist benefits retained by Defendants, the UIM premiums received by Defendants, the unjust profit that Defendants derived therefrom, and any other amounts to which Belanger and Class Members are equitably entitled under the theory of unjust enrichment;

v. Awarding treble damages in accordance with NMSA 1978, Sections 57-12-10(B) and any and all damages pursuant to NMSA 1978, Sections 57-12-1 through -26, which will deter Defendants and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth herein;

vi. Granting declaratory relief that establishes the rights and obligations of the parties with respect the claims set forth herein;

vii. Granting injunctive relief requiring Defendants to properly inform Belanger and Class Members throughout the application and policy underwriting process of the true value of the underinsured motorist benefits that are being advertised and sold;

viii. Awarding Belanger and Class Members their costs and expenses incurred in these actions, including reasonable attorney's fees, experts' fees, and costs; and

ix. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Kedar Bhasker
Kedar Bhasker
BHASKER LAW
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 407-2088
Fax: 505 709-3279
Kedar@bhaskerlaw.com

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone: 505 998-6626
Fax: 505 336-7743
corbin@hildebrandtlawnm.com

and

Geoffrey Romero
LAW OFFICES OF GEOFFREY R.
ROMERO
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@geoffromerolaw.com

*Counsel for the Plaintiff*