**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————

YVONNE BELANGER,

      Plaintiff,

vs.                                       No. 1:19-cv-00317-WJ-SCY

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,
ALLSTATE INDEMNITY INSURANCY COMPANY,
ALLSTATE INSURANCE COMPANY,
ALLSTATE ASSURANCE COMPANY
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, ALLSTATE
VEHICLE AND PROPERTY INSURANCE COMPANY, and
ALLSTATE NORTHBROOK INDEMNITY COMPANY,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART and DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

THIS MATTER comes before the Court upon a Motion to Dismiss the Second Amended

Class Action Complaint, filed on January 18, 2022 by Defendants Allstate Indemnity Insurance

Company, Allstate Insurance Company, Allstate Assurance Company, Allstate Property and

Casualty Insurance Company, Allstate Vehicle and Property Insurance Company, and Allstate

Northbrook Indemnity Company ("Defendants" or "Allstate") (**Doc. 42**). Having reviewed the

parties' pleadings and the applicable law, the Court GRANTS the Defendants' motion as to Counts

1 and 7 (negligence and unjust enrichment claims) but DENIES Defendants' motion as to the other

counts in the second amended complaint.[1]

**BACKGROUND**

---

[1] Defendants request oral argument on the motion, *see* Doc. 50, which the Court finds unnecessary.

This case is a putative class action arising out of a dispute over "underinsured motorist coverage" in an automobile policy. NMSA § 66-5-301 ("[U]nderinsured motorist means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.").

## I.    Factual Background

Plaintiff alleges that she was solicited and sold illusory underinsured motorist coverage and seeks to collect damages for Defendants' alleged deceptive business practices under various causes of actions including but not limited to negligence, violations of the New Mexico Unfair Trade Practices Act and Breach of the Covenant of Good Faith and Fair Dealing. Plaintiff also seeks reformation of coverage, declaratory relief and injunctive relief. Doc. 40 (Sec. Am. Compl.). On April 4, 2019, Defendants removed the case from the Second Judicial District, County of Bernalillo under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. §§ 1332(d) and 1453, on the grounds that (1) this is a putative class action with more than 100 putative class members; (2) there is minimal diversity among the parties; and (3) the Complaint places into controversy an amount that exceeds $5,000,000 in the aggregate.

The allegations in the Second Amended Complaint ("SAC") revolve around Plaintiff's "Uninsured Motorists Insurance – Coverage ST" ("Coverage ST") at the minimum limits of $25,000 per person/$50,000 per accident. Ms. Belanger alleges that on September 4, 2015 she sustained bodily injuries and other damages arising from a motor vehicle accident, when an underinsured motorist rear-ended her vehicle. At the time of the accident, Belanger's policy provided Coverage ST with minimum limits under Allstate automobile policy number 829 720 835, which she originally purchased on or about July 1, 2014, and for which she paid a premium

of $65 for the UM/UIM Coverage that Allstate offered for the six months from July 1, 2014 to January 1, 2015 (the "Policy"); *see* Doc. 40-3. The tortfeasor had the same minimum financial responsibility liability coverage of $25,000 per person/$50,000 per accident. (SAC ¶32).

After the accident, the tortfeasor's insurer paid Ms. Belanger the full $25,000 under her liability policy, but denied her claim for damages above the $25,000 paid by the tortfeasor's insurer because (1) Allstate deducted from the ST Coverage the sums paid by the tortfeasor's insurer; and (2) the tortfeasor's liability coverage limits, which were the minimum financial liability limits of $25,000 per person/$50,000 per accident, equaled her minimum limits Coverage ST.

On December 17, 2021, Plaintiff filed the SAC asserting the following claims:

Count 1: Negligence;
Count 2: Violations of the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57-12-2 to 58-12-10 ("UPA");
Count 3: Violations of the New Mexico Unfair Insurance Practice Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA");
Count 4: Reformation of Insurance Policy;
Count 5: Breach of the Covenant of Good Faith and Fair Dealing;
Count 6: Negligent Misrepresentation;
Count 7:  Unjust Enrichment;
Count 8: Declaratory Judgment; and
Count 9: Injunctive Relief.

Belanger contends that Allstate failed to properly inform her: (1) how the Coverage ST is illusory in the event of a covered occurrence involving an underinsured driver; and (2) that she would not benefit from the purchase of Coverage ST because pursuant to the *Schmick* offset, Ms. Belanger's recovery of Coverage ST benefits would be offset by the amount of the tortfeasor's liability coverage.[2] (SAC ¶¶ 18-20).  Plaintiff's putative class action seeks to maintain a class of the following:

---

[2] The *Schmick* offset rule allows an accident victim's insurance company to subtract whatever the driver receives from the tortfeasor's insurance company from the payment due to its own policyholder.  *Crutcher v. Liberty Mut.*

All persons (and their heirs, executors, administrators, successors, and assigns) from whom Defendants collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide underinsured motorist coverage on the face of its application and declaration pages, but which effectively provides no underinsured motorists coverage and/or misleading underinsured coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

Doc. 40, ¶42.  Plaintiff also asserts the following subclass:

All Class Members (and their heirs, executors, administrators, successors, and assigns from whom Defendants collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage and/or misleading underinsured coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available and would be or were denied those benefits by Defendants due to the *Schmick* offset.

Doc. 40, ¶44.

## II.    Procedural Background and the *Crutcher* Decision

In *Crutcher v. Liberty Mut. Ins. Co., et al.*, United States District Judge Judith C. Herrera

certified the following questions to the New Mexico Supreme Court:

Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher*, Case No.:18-cv-00412-JCH-LF (D.N.M.), 2019 U.S. Dist. LEXIS 203469, at *12

(D.N.M. Jan. 9, 2019). The instant case was stayed pending the New Mexico Supreme Court's

---

*Ins. Co.*, 2022-NMSC-001, ¶ 9, 501 P.3d 433, 435; *see Schmick v. State Farm Mutual Automobile Insurance Company,* 704 P.2d 1092 (1985).

ruling regarding the questions certified to it by Judge Herrera, in the expectation that it "may resolve substantial issues in this case." Doc. 33 at 2. On December 10, 2021, the Supreme Court answered those questions, concluding that (1) underinsured motorist coverage at the minimum limits was illusory in the sense that it was misleading to the average insured, but (2) the future sale of such insurance was lawfully permitted as long as the limitations of minimum limits underinsured motorist coverage were disclosed to insureds in the form of an "exclusion." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33.  The stay was lifted in this case (Doc. 38) and before the Court now is Defendants' motion to dismiss.  Allstate contends that none of Plaintiff's claims survive after *Crutcher* while Plaintiff maintains that *Crutcher* did not moot any of the asserted claims in the second amended complaint (Doc. 40).

## III.    Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Conclusory allegations of liability, without supporting factual content, are insufficient. "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Because this is a diversity case based on New Mexico law, this Court must ascertain and apply New Mexico law. In doing so, the Court must either follow the decisions of the New Mexico Supreme Court, or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First*

*Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011). Also, the Court may consider the insurance policy as it is referred to in the complaint without converting Defendants' motion to one brought under Fed. R. Civ. P. 56 because it is central to the Plaintiffs' claims and the parties do not dispute its authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), *cited in Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

## DISCUSSION

Uninsured motorist ("UM") insurance coverage protects drivers who are damaged by a tortfeasor who does not have automobile insurance. *See* NMSA 1978, § 66-5-301(A) (1983); *see* 501 P.3d at 435. Underinsured ("UIM") insurance coverage protects drivers who are hit by a tortfeasor who does not have enough auto insurance to cover the cost of the driver's injuries and damages. *Id.; see* § 66-5-301(B). Under the Mandatory Financial Responsibility Act, New Mexico requires every driver to carry an "absolute minimum amount" of auto liability insurance of at least $25,000 per person and $50,000 per occurrence and UM/UIM insurance coverage of at least the same amount. 501 P.3d at 435 (citing NMSA 1978, § 66-5-215(A)(1)-(2) (1983); § 66-5-301(A)). Pursuant to statute, a policyholder is underinsured when there is a difference between the injured driver's uninsured/underinsured motorist insurance and the tortfeasor's liability insurance. *Id.*

In *Crutcher,* the New Mexico Supreme Court found that UIM coverage on a policy that provides minimum UM/UIM limits of $25,000 per person/$50,000 per accident was illusory because "it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." 2022-NMSC-001, ¶ 2, 501 P.3d 433, 434. The *Schmick* offset rule also made it "practically impossible" for minimally insured motorists to collect UIM insurance under a statutory minimum policy because the deduction of the $25,000 received from the tortfeasor's insurance company from the

$25,000 due from the policyholder's insurer balances out to zero. 501 P.3d at 438. Similarly, an injured motorist may receive no benefit from a policy where the tortfeasor does not meet the statutory definition of an uninsured motorist, as when the total limits of liability insurance are equal to the injured motorist's UM/UIM coverage limits. *See* §66-5-301(B).[3] As a result of the *Crutcher* decision, an insurer must adequately disclose the limitations of minimum UM/UIM coverage—namely, that under the policies described in this case, a policyholder may never receive underinsurance motorist coverage. Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage. *Id.*

## I.      Whether *Crutcher v. Liberty Mut. Ins. Co.* Applies Prospectively

Defendants believe that *Crutcher* applies prospectively and as a result, grants them immunity from prior misrepresentation claims as to minimum limit underinsured motorist coverage. New Mexico applies "a presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively." *Beavers,* 118 N.M. at 398, 881 P.2d at 1383. "The presumption of retroactive application can be overcome by an express declaration, in the case announcing the new rule, that the rule is intended to operate with selective prospectivity or pure prospectivity." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 170, 245 P.3d 1214, 1222. If the New Mexico Supreme Court does not expressly state whether a new rule is intended to operate prospectively, a lower court may determine whether the presumption of retroactive application is overcome by applying three factors. *Id.* at 170.

Defendants rely on the following language from *Crutcher*:

> Therefore, hereafter, the insurer shall bear the burden of disclosure to the policyholder that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an

---

[3] Both situations were presented in *Crutcher* as reasons for the denial of Mr. Crutcher's claim. The New Mexico Supreme Court applied the same analysis to both situations. 501 P.3d at 435.

accident with a tortfeasor who carries minimum liability insurance. Consistent with the purpose and intent of the UIM statute, this disclosure will allow purchasers to make a fully informed decision when selecting UM/UIM insurance coverage.

2022-NMSC-001, ¶32. The Court rejects Defendants' arguments and concludes that *Crutcher* generally supports Plaintiffs' claims for several reasons.[4]

First, Defendants assert that the word "hereafter" is an express statement by the New Mexico Supreme Court that it intended *Crutcher* to apply prospectively. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 32. The Court disagrees. Use of the word "hereafter" must be interpreted in the context of the certified question that was presented, which was whether insurance companies could lawfully charge a premium for underinsured motorist coverage at the minimum limit. The New Mexico Supreme Court answered that question in the affirmative, concluding that it would not prohibit the issuance of minimum limit underinsured motorist coverage for a premium as long as an appropriate disclosure was provided in the form of an exclusion in its policy. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33, 2021 WL 4520651. Read in this context, the New Mexico Supreme Court meant that "hereafter," minimum limit underinsured motorist coverage could be sold only with proper disclosure. *Id*. at ¶ 2 (holding that "without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage").

Second, the New Mexico Supreme Court made clear that its ruling did not give immunity to insurers for pre-*Crutcher* clams:

> [W]e find no merit in Defendants' argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels.

---

[4] The prospectivity question was recently addressed by United States District Judge Kea Riggs, who rejected Defendants' argument and found that Crutcher does not provide an insurer with immunity for misrepresentation claims which arose pre-*Crutcher*. See Doc. 48, Ex. 1 (*Palmer v. State Farm Mutual Insurance Company, et. al*., No. 1:19-cv-00301-KWR-SCY, ECF 55 (D.N.M February 4, 2022).

*Id*. at ¶ 26.

Third, in general, New Mexico cases expressly state when a case applies prospectively and explain with reasoned analysis why it applies prospectively. *See, e.g., Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 45-51, 378 P.3d 13, 32 ("Our holding in this case will apply on a modified prospective basis"); *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 30, 147 N.M. 678, 688–89, 228 P.3d 462, 472–73 (analyzing whether rule should apply prospectively and examining factors); *Jordan v. Allstate Ins. Co.,* 2010-NMSC-051, ¶ 29 (same). The Court finds that the New Mexico Supreme Court's use of the word "hereafter" does not constitute an express statement that *Crutcher* applies prospectively as to misrepresentation claims.

Defendants maintain that the presumption of prospectivity is nevertheless overcome. The New Mexico Supreme Court uses three factors to determine whether the presumption of retroactive application has been overcome. In considering these factors, the Court concludes the presumption of retroactive application has not been overcome as to misrepresentation claims.

The first factor considers whether "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Here, the New Mexico Supreme Court clearly considered its *Crutcher* ruling as flowing from, and foreshadowed by, its ruling in *Weed Warrior. See Crutcher*, 2022-NMSC-001, ¶ 21 (citing *Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209) (noting that "if the tortfeasor carried the statutory minimum of liability insurance and the injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000").

*Crutcher* also expressly stated that the plain language of the statute §66-5-30(B) did not provide insurers immunity from misrepresentation claims:

> [W]e find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels.

2022-NMSC-001 at ¶ 26. The New Mexico Supreme Court applied well established misrepresentation law to the *Crutcher* case and therefore, this factor weighs in favor of retroactivity.

The second factor requires that the Court "weighs the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). This factor also weighs in favor of retroactive application. The *Crutcher* court was clear that although minimum limit underinsured coverage was statutorily authorized, nothing in the statute authorizes insurers to misrepresent the extent of underinsured motorist coverage.

Under the third factor, this Court must consider "the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Retroactive application is not inequitable to insurers especially here where the New Mexico Supreme Court has historically held that any hardship resulting from retroactive application of a rule should be borne by insurers. *See Jordan,* 2010-NMSC-051, ¶ 29, 149 N.M. at 171, 245 P.3d at 1223 ("On balance, we deem it more

equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries").

The Court concludes that the presumption of retroactive application has not been overcome and therefore, *Crutcher* does not provide Defendants with immunity for misrepresentation claims which arose pre-*Crutcher* and does not mandate dismissal of Plaintiff's claims.[5]

## II.   Proper Defendants in this Lawsuit

In this lawsuit, Plaintiff is suing not only Allstate Fire and Casualty Insurance Company, but also other, separate corporate entities, namely: Allstate Indemnity Insurance Company; Allstate Insurance Company; Allstate Assurance Company; Allstate Property and Casualty Insurance Company; Allstate Vehicle and Property Insurance Company; and Allstate Northbrook Indemnity Company (the "Improper Defendants"). Defendants point out that Ms. Belanger's Policy was issued by Allstate Fire and Casualty Insurance Company ("Allstate Fire"), and because these other entities were not parties to the contract, Plaintiff's allegations as to these other entities should be dismissed. *See Fleet Mortgage Corp. v. Schuster*, 112 N.M. 48, 49, 811 P.2d 81, 82 (1991) (holding that generally one who is not a party to a contract cannot maintain suit upon the contract). Plaintiff contends that the other entities "worked as a joint venture to sell automobile policies to New Mexico residents" including Plaintiffs because "Defendants publicly display the companies affiliated with Defendants (which self-identifies as "Allstate") on its website, Allstate.com." (SAC ¶¶ 10-11).

The Court declines to decide this issue on a motion to dismiss. Defendants are correct that a subsidiary and its parent corporation "are viewed as independent corporations." *Cruttenden v.*

---

[5] Defendants object to Plaintiff's reliance on pre-*Crutcher* cases, *see* Doc. 49 at 10, but this reliance is permissible given the Court's conclusion that *Crutcher* does not provide Defendants with immunity for misrepresentation claims.

*Mantura*, 640 P.2d 932, 934, 97 N.M. 432, 435 ("A subsidiary and its parent corporation are viewed as independent corporations."). However, Plaintiff provides a sound reason to defer ruling on this issue until after some discovery has been done which may flesh out whether Plaintiff has properly pled a joint venture relationship with defendants in this case and if so, which claims may continue on that theory. *See, e.g., Dellaira v. Farmers Ins. Exch.*, 2004-NMCA-132, ¶ 14, 136 N.M. 552, 556, 102 P.3d 111, 115 (allowing claims for breach of the covenant of good faith and fair dealing, UPA, and UIPA against a non-contracting insurance carrier defendant to remain).

Defendants' Motion to Dismiss certain co-defendants is therefore DENIED at this time.

## III.    Count I: Negligence

Defendants move to dismiss Plaintiff's negligence claim on two grounds. First, relying on *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co*., Defendants argue that New Mexico law does not support an independent negligence claim against an insurance company and that negligence becomes only an element in misrepresentation or bad faith claims. 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30, 690 P.2d 1022, 1024. The *Ambassador* case dealt with a failure to settle a third-party claim, but its reasoning is still relevant here. *See Fava v. Liberty Mut. Ins. Corp.*, No. 17CV00456 WJ/LF, 2019 WL 133269, at *5 (D.N.M. Jan. 8, 2019) (finding *Ambassador's* reasoning relevant to discussion on whether negligence claim could proceed).

Under New Mexico law, "only those obligations contained in an insurance agreement are imposed upon the parties to that agreement." *Ambassador*, 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30 ("An insurer's obligation to its insured is contractual and must "be determined by the terms of the policy."). In *Ambassador,* the court concluded that "imposing a negligence standard on the insurer would impose a duty that is not expressly provided for in the contract, with the exception of an insurer's additional duty to carry out its duties under the contract in 'good faith.'" *Id.*

Plaintiff contends that *Crutcher* supports the availability of a negligence claim because the New Mexico Supreme Court found that the written insurance policy at issue led an insured into the reasonable belief that they would receive underinsured motorist benefits "when in reality they may never receive such a benefit." *Crutcher,* 2022-NMSC-001, ¶ 2. However, *Crutcher* offers no support for this contention as it did not discuss whether an insured may sue an insurer on a garden-variety negligence claim. Further, while Count 1 is styled as a "negligence" claim, the allegations that Defendants' conduct is "misleading" and "deceptive"—which are typical and characteristic of negligent misrepresentation claims. *See* Doc. 40, ¶65 (asserting that underinsured coverage sold to Plaintiff and class embers was "illusory and/or misleading and Defendants materially misrepresented the terms and benefits of underinsured coverage, yet charged a premium for such illusory and/or misleading coverage").

In *Fava,* mentioned above, the undersigned as presiding judge addressed the question of whether an insured can assert an independent claim of negligence against an insurer. 2019 WL 133269, at *5.  In that case, the Court recognized that negligence is an "element of the bad faith and statutory claims asserted by the plaintiffs in that lawsuit, but found that a negligence claim was "not legally supportable." *Id.* at *7.  Plaintiff offers no case law to counter either the reasoning of *Ambassador* or the Court's conclusion in *Fava* that a plaintiff cannot maintain a separate negligence claim against the insurer. Instead, Plaintiff cites to several cases where courts have purportedly allowed negligence claims to proceed, but on closer look, those claims are bad faith claims or claims asserting negligent misrepresentation. *See Bhasker I* and *Bhasker II.*  284 F. Supp. 3d 1191, 1238 (D.N.M. 2018)("*Bhasker I*"); 361 F. Supp. 3d 1045, 1150 (D.N.M. 2019)(*"Bhasker II"*); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 18cv00328-WJ-SCY, 2018 WL 4148434, at *4 (D.N.M. Aug. 30, 2018).

Plaintiff presents no legal basis to support a separate and independent negligence claim and therefore the Court finds that Defendants are entitled to DISMISSAL of the negligence claim in Count 1.

## IV.   Count 2: New Mexico Unfair Trade Practices Act

In Count 2 of the SAC, Plaintiff alleges that Defendants violated the New Mexico Unfair Trade Practices Act ("UPA"), N.M.S.A.1978, § 57-12-2 to 58-12-10 ("UPA"), including but not limited to §§ 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and § 57-12- 2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices.

The UPA imposes a duty to disclose material facts "reasonably necessary to prevent any statements from being misleading." *Smoot v. Physicians Life Ins. Co.,* 2004–NMCA–027, ¶ 15, 87 P.3d 545, 549 (N.M. Ct. App. 2004), *quoted in Vilar v. Equifax Info. Servs., LLC*, 2014 WL 7474082, at *27 (D.N.M. 2014). To state a claim under the UPA, a plaintiff must show that: (1) the defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person. *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007) (citing *Brooks v. Norwest Corp.,* 136 N.M. 599, 611, 103 P.3d 39 (2004)); *see also Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (1988).

Defendants contend that Count 2 should be dismissed because the allegations in the SAC do not point to any misrepresentations Allstate made in connection with the sale of UM/UIM coverage to Ms. Belanger. They contend that Allstate cannot be liable for any violations under the UPA because, as *Crutcher* acknowledged, the sale of UIM coverage to Plaintiff conforms with

New Mexico law. *See Crutcher*, 2021 WL 4520651, at *7 (noting that "the statutory scheme purposefully selected by the New Mexico Legislature" contemplates that UM/UIM Coverage is offset by the tortfeasor's liability coverage). They also point out that Allstate did not violate any disclosure requirements because the policy issued to Plaintiff explains that it would only apply if the Coverage ST limits exceed the minimum financial responsibility limits and would be offset by any payments to them, including by a tortfeasor's liability coverage. SAC ¶ 6; Ex. 3, p. 25.

Defendants' argument misses the mark. Plaintiff does not object to New Mexico's statutory scheme allowing the *Schmick* offset, nor is she simply claiming non-disclosure of the offset in the policy she purchased. Rather, Plaintiff argues that any disclosure provided was inadequate. This is the same issue addressed in *Crutcher,* which found the policy at bar to be "illusory" because it did not clearly explain that minimum UM/UIM policyholders may never receive the UM/UIM benefits for which they had paid premiums. *Crutcher,* 2022-NMSC-001, ¶2, 501 P.3d 433, 434. The New Mexico Supreme Court recognized that the statutory scheme allowing the offset did not permit insurers to mislead insureds or misrepresent the nature of underinsured motorist coverage. *Id.* at ¶26, 501 P.3d at 439.

*Crutcher* also noted that what is sufficient disclosure for the insurer is not necessarily sufficient for an insured:

> [L]anguage at issue should be considered not from the viewpoint of a lawyer or a person with training in the insurance field, but from the standpoint of a reasonably intelligent lay[person]. . . The average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM insurance, he or she will never receive the benefit of underinsured motorist coverage.

*Crutcher*, 2022-NMSC-001, ¶¶29-30, 501 P.3d 433, 440.

The "disclosure" provided in the Coverage ST issued to Ms. Belanger does not appear to be any less confusing to an insured than the one addressed in *Crutcher. See* Doc. 40-3 (references to provisions in Coverage ST Policy, Pt. 5, Sec. 1). As Plaintiff observes, the policy contains no specific information about how the *Schmick* offset affects an insured with a minimum limit UIM policy nor does it make it clear enough for a reasonable consumer to understand that she may never reap the benefits of the coverage she selected.

Count 2 of the second amended complaint asserts that Defendants or their agents:

- knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico;

- failed to deliver the quality or quantity of services applied for and purchased and paid for;

- made false and misleading representations that may, tend to, and do deceive or mislead persons into believing that minimal-limits underinsured motorist coverage has a value that it does not have and into contracting for and paying premiums for underinsured motorist policies that are illusory and/or misleading and do not provide the underinsured motorist coverage and benefits that Defendants' customers reasonably expected to receive.

Doc. 40, ¶¶72-74.

These allegations sufficiently allege that Defendants violated their duty to disclose reasonably necessary material facts as required under the UPA and therefore the Court declines to dismiss Count 2.

## V.     Count 3: Violations of the UIPA

New Mexico law strongly encourages open and transparent dealings in the insurance context, particularly with regard to material information. *Brule v. Blue Cross & Blue Shield of New Mexico*, 455 F. App'x 836, 840 (10th Cir. 2011); *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶¶ 15–16, 135 N.M. 265, 87 P.3d 545.  The New Mexico Unfair Insurance Practice Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA") "seeks to prohibit unfair or deceptive acts and practices in the insurance industry." *Brule v. Blue Cross & Blue Shield of New Mexico*, 455 F.

App'x 836, 840 (10th Cir. 2011). Insurance companies "have a duty to disclose material facts about the policies they sell under the UIPA." *Id.* (citing *Azar v. Prudential Ins. Co. of Am.,* 133 N.M. 669, 68 P.3d 909, 930 (2003)). Additionally, New Mexico has long recognized that "both the insurer and the insured have a duty not to misrepresent or withhold information material to an insurance contract." *Id.* (quoting *Azar*, 68 P.3d at 930).

Defendants seek dismissal of Plaintiff's claim brought under the UIPA on the ground that Plaintiff fails to specify what part of the statute Allstate violated and how, and that such generalized accusations are insufficient to satisfy the *Iqbal-Twombly* standard. Count 3 alleges in part that Defendants:

- "misrepresented the terms of the policy sold and provided to [Belanger], and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading and failed to implement and follow reasonable standards in the sale and provision of insurance";

- "took advantage of the lack of knowledge and experience of [Belanger] to a grossly unfair degree"; and

- "failed to abide by [its] statutory duties under the UIPA."

Doc. 40, ¶¶ 86-89). 0-94). The Court disagrees with Defendants' characterization of these assertions as "vague." The UIPA specifically includes misrepresentations of policy provisions as prohibited conduct. *See* NMSA §59A-16-20(A) ("[M]isrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue.").

Plaintiff has alleged a viable claim under the UIPA and therefore the Court DENIES Defendants' request to dismiss Count 3.

## V.    Count 4: Reformation

A party is entitled to reform an insurance policy under New Mexico law if: (1) there is a unilateral mistake "accompanied by fraud or other inequitable conduct on the part of the

nonmistaken party" or (2) there is a mutual mistake. *Christy v. Travelers Indem. Co. of Am.,* 810 F.3d 1220, 1225 n.4 (10th Cir. 2016). Further, if a party is seeking to reform a contract based on unilateral mistake, that mistake must be "reasonable." *See Chromo Mountain Ranch P'ship v. Gonzales*, 681 P.2d 724, 725, 101 N.M. 298, 299 (N.M. 1984) (finding reformation appropriate where plaintiff "acted under a reasonable unilateral mistake").

Defendants contend that Count 4 should be dismissed because Plaintiff's mistake was not reasonable. The Court soundly rejects that argument.  In *Crutcher,* the New Mexico Supreme Court stated that construction of standardized policy language "must be based upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who . . . will have limited knowledge of insurance law." *Crutcher*, 2022-NMSC-001, 501 P.3d 433. Using this construction, the New Mexico Supreme Court held that UIM coverage on a policy that offers statutory minimum was illusory. *Id.*

Count 4 states that Plaintiff "and similarly situated Class Members mistakenly believed that, by paying a premium for specific dollar amounts and limits of underinsured motorist coverage, they would receive underinsured motorist coverage at those same specific dollar amounts and limits."  Doc. 4, ¶97. There is nothing in the complaint suggesting that Ms. Belanger has more than a limited knowledge of insurance law. The Court therefore finds that Plaintiff has pled sufficient facts that she and other putative class members were misled into the reasonable expectation that they had UM/UIM coverage.

Defendants also contend that dismissal of Count 4 is appropriate because such relief was neither prescribed in *Crutcher,* nor does it appear to be permissible under New Mexico law. They point to language in *Crutcher* recognizing that New Mexico lawmakers "have purposefully chosen to adopt a gap theory of underinsurance coverage which permits an offset of liability coverage

available.[6] *Crutcher* does not militate dismissal of Plaintiff's claim for reformation. While the New Mexico Supreme Court did not prescribe particular relief under a reformation theory, it certainly does not preclude it for insureds who had been charged premiums for benefits they may never receive under a minimum limits UIM policy. The fact that New Mexico's statutory scheme follows a "gap" theory of underinsurance does not thereby permit insurers to mislead consumers about its application to minimum limit underinsurance policies.

Moreover, New Mexico law allows reformation in instances where insurers violated reasonable expectation of insureds. *See Marckstadt v. Lockheed Martin Corp*., 2010-NMSC-001, ¶ 19, 147 N.M. 678, 685, 228 P.3d 462, 469 ("Unless the rejection requirements of 13.12.3.9 NMAC are strictly met, UM/UIM coverage will be read into an automobile liability policy") (citing *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, 111 N.M. 154, 155, 803 P.2d 243, 244); *see also Jimenez v. Foundation Reserve Ins. Co.*, Inc.,1988-NMSC-052, ¶ 10, 107 N.M. 322, 324, 757 P.2d 792, 794 (holding that it would be "repugnant to public policy" to charge a premium and not provide the coverage).

The Court therefore DENIES Defendants' Motion to Dismiss Plaintiff's claim for reformation in Count 4.

## VI.     Count 5: Breach of the Covenant of Good Faith and Fair Dealing

---

[6] *Crutcher* described the two policy theories of underinsurance coverage this way:

> When it comes to underinsurance, there are two policy theories of coverage that evince themselves in a jurisdiction's statute: (1) gap theory and (2) excess theory or floating layer theory . . . In jurisdictions that have adopted the gap theory, underinsurance coverage will compensate an insured injured driver up to the amount of UM/UIM protection purchased. . .  In jurisdictions that have adopted the excess theory or floating layer theory, underinsurance will fully compensate an insured injured driver for the cost of the driver's damages, even if the total is more than what the driver purchased in UM/UIM coverage.

Crutcher, 2022-NMSC-001, ¶ 18, 501 P.3d at 437.

New Mexico recognizes a duty of good faith between insurer and insured. *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30, 690 P.2d 1022, 1024 (internal citation omitted); *see also Salas v. Mountain States Mut. Cas. Co.*, 145 N.M. 542, 546 (2009). With insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that one party will not do anything that will deprive the other of the benefits of the agreement. *Watson Truck & Supply Co., Inc. v. Males,* 1990-NMSC-105, ¶ 12, 111 N.M. 57, 801 P.2d 639.

Count 5 alleges in part:

- A special relationship exists between Defendants, on the one hand, and Belanger and Class Members, respectively, on the other hand, sufficient to impose a duty of good faith and fair dealing on Defendants owed to Belanger and Class Members.

- Implicit in the contract of insurance between Belanger and Class Members, on the one hand, and Defendants on the other was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Belanger and Class Members.

- Defendants breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

    o a. Failing to adequately disclose to Belanger and Class Members the illusory and/or misleading coverage it solicited and sold;

    o b. Charging a premium for coverage that was not provided;

Doc. 40, ¶¶103-105.  These allegations go to the heart of whether Allstate acted in "good faith." The Court therefore finds that Plaintiff has plausibly alleged a claim for breach of the covenant of good faith and fair dealing and DENIES Defendants' request to dismiss the claim.

**VII.    Count 6: Negligent Misrepresentation**

To state a negligent misrepresentation claim, a plaintiff must show that "the offending party [] breached a duty of disclosure owed to the injured party, the injured party must have had a right to rely on the misinformation, and it must have sustained damages." *Ruiz v. Garcia*, 1993-NMSC-

009, ¶ 26, 115 N.M. 269, 274–75, 850 P.2d 972, 977–78; *see also Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642, 652.

Defendants contend that this claim should be dismissed because Allstate "did not hide anything" from Ms. Belanger. Allstate disclosed to Plaintiff that her Coverage ST would only apply if the limits exceeded the minimum financial responsibility limits, would be subject to offset, and had no further duty to disclose beyond that information. One need not look further than the holding in *Crutcher* to find that Plaintiff's negligent misrepresentation claim survives Allstate's argument: disclosure that does not put the minimally insured consumer on notice that she may never receive underinsurance motorist coverage is insufficient and illusory, and misrepresents what the consumer believed she was paying for.[7]

The Court finds that Plaintiff has alleged a viable claim that Defendants misled her into believing she would receive underinsured motorist coverage when they would not, and so the Court declines to dismiss Count 6.

## VIII.  Count 7: Unjust Enrichment

To prevail on a claim for unjust enrichment, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 54, 150 N.M. 428, 260 P.3d 414, 428–29.

Defendants seek dismissal of Count 7 because New Mexico law "strongly disfavors unjust enrichment claims when remedies exist under contract law." *Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*, No. CV 15-00218 WJ/CG, 2015 WL 12803775, at *3 (D.N.M. June 25, 2015)

---

[7] Defendants cite to a provision in the Limits of Liability section of the policy referring to reduction of damages that are paid out—assumedly referring to the offset—but this language does not relay the necessary information to the insured that she may be paying a premium and getting nothing in return.  *See* Doc. 40, ¶6, Ex. 3 at 26.

(dismissing an unjust enrichment claim asserted by the insurer against an additional named insured). As a general rule, "equity will not act if there is a complete and adequate remedy at law." *Id.* (citing *Sims v. Sims*, 122 N.M. 618, 624 (1996)).  The insurance policy in this case constitutes such a contract which precludes an unjust enrichment claim. *See Elliott Indus. Ltd. P'ship v. BP Amer. Prod. Co.*, 407 F.3d 1091, 1116–17 (10th Cir. 2005) (stating that the theory of unjust enrichment has evolved to provide a right to relief where the plaintiff has no alternative right on an enforceable contract) (citing *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, 129 N.M. 2000); *Walker v. Emergency Staffing Sols., Inc.*, No. 16-CV-1103 SMV/GBW, 2017 WL 3206641, at *4 (D.N.M. Feb. 2, 2017).

Plaintiff offers no relevant law to counter Defendant's position. The Court therefore grants Defendant's motion to dismiss Plaintiff's unjust enrichment claim in Count 7.

## IX.    Counts 8 and 9: Claims for Declaratory and Injunctive Relief

Defendant argues that the declaratory judgment claim should be dismissed because (1) it is duplicative of their reformation claim and (2) it is moot following *Crutcher*.  First, Counts 8 and 9 are not duplicative of Plaintiff's reformation claim. They seek relief that declares the rights and obligations of the parties in this case and enjoins Defendants from collecting premiums for the sale of illusory underinsured motorist coverage without adequate disclosure. Such relief is not duplicative of the relief requested in Plaintiff's reformation claim.

Second, these claims are not moot after *Crutcher.* While *Crutcher* addresses the same issues presented in Plaintiff's SAC, the Plaintiff and policies in this case are separate and distinct and the relief provided to the plaintiffs in *Crutcher* does not automatically extend to Plaintiff in this case without pursuing litigation. Moreover, these claims cannot be characterized as moot when Defendants still continue to vigorously contest the matters in this case, claiming that *Crutcher*

applies prospectively and that the policy at issue is different from the policy addressed in *Crutcher* in that the Coverage ST adequately discloses the consequences of the offset for minimum limit policyholders.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss the Second Amended Class Action Complaint **(Doc. 42)** is hereby GRANTED IN PART and DENIED IN PART as follows:

(1) the Court DISMISSES Count 1 (Negligence) and Count 7 (Unjust Enrichment);

(2) the Court DECLINES TO DISMISS the remaining counts (Counts 2, 3, 4, 5, 6, 8 and 9).

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE