IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YVONNE BELANGER, individually and on behalf of other similarly situated individuals,

    Plaintiff,

v.                                                                                            No. 19-cv-00317-WJ-SCY

ALLTATE FIRE AND CASUALTY INSURANCE COMPANY;
ALLSTATE INDEMNITY INSURANCE COMPANY;
ALLSTATE INSURANCE COMPANY;
ALLSTATE ASSURANCE COMPANY;
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY; and ALLSTATE NORTHBROOK INDEMNITY COMPANY

    Defendants.

### UNOPPOSED MOTION AND BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT

The Class Representative, Yvonne Belanger, hereby move the Court pursuant to Federal Rule of Civil Procedure 23(e) for the entry of a Final Order and Judgment, which: (1) grants final approval of the proposed Settlement as fair, adequate, and reasonable; (2) approves the form, content, and manner of the Settlement Class Notice; (3) approves attorney's fees and incentive award; and (4) finds there are no objections to the proposed Settlement and that the Settlement is binding as to all Class Members except for the six (6) persons who submitted timely opt-out requests.  Defendants, ("Allstate") do not oppose this motion. Defendants deny all liability and any allegations of wrongdoing.

**Litigation and Procedural Background**

This lawsuit arises from Plaintiffs' allegation that part of the Underinsured Motorist ("UIM") coverage they purchased from Allstate was illusory because when there was  an accident, Allstate

subtracted the at-fault drivers' liability coverage payments from their respective combined Uninsured ("UM") and UIM coverage limits pursuant to the offset described in *Schmick v. State Farm Mutual Automobile Insurance Co.*, 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092 (the "*Schmick* Offset"), and that premiums were improperly charges for that allegedly illusory coverage.

Ms. Belanger carried $25,000 per person in UM/UIM coverage and claims that the entire amount was illusory UIM. Plaintiff claims those portions of UIM coverage was illusory because she had an accident and Allstate subtracted the at-fault drivers' $25,000 liability coverage payments from her UM/UIM coverage limits to pay nothing on Ms. Belanger's claim.

On January 29, 2019, Plaintiff sued Allstate in the Second Judicial District in the State of Mexico, County of Bernalillo. Allstate removed the case to this Court. Plaintiff asserted nine claims: (1) negligence, (2) violations of New Mexico's Unfair Trade Practices Act, (3) violations of New Mexico's Unfair Insurance Practices Act, (4) policy reformation, (5) breach of the implied duty of good faith and fair dealing, (6) unjust enrichment, (7) negligent misrepresentation, (8) declaratory judgment, and (9) injunctive relief. *See*, Second Amended Complaint (Dkt. 40).

This case, along with the other similar offset putative class action cases, was stayed pending the New Mexico Supreme Court's determination of a certified question of law presented in the *Crutcher v. Liberty Mut. Ins.* Co., No. 1:18-cv- 00412-JCH-LF (D.N.M.) case. As previously mentioned, the NMSC answered the certified question of law and published an opinion on October 4, 2021. This answer has helped provide much needed clarity regarding the misleading nature of the UIM coverages.

On January 18, 2022, Allstate filed an opposed motion to dismiss this case in light of the certified question in *Crutcher*. (Dkt. 42).

On March 2, 2022, this Court largely denied Defendant's motion to dismiss. (Dkt. 52).

Ten other lawsuits were also filed around the same time as this one against other insurance

carriers. In one of those related cases filed by Plaintiffs' counsel herein——the court certified the following questions to the New Mexico Supreme Court:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher v. Liberty Mut. Ins. Co.*, No. 118CV00412JCHKBM, 2019 WL 12661166, at *4 (D.N.M. Jan. 9, 2019). Once this question was certified, this case and all other active related cases were stayed pending ruling. The New Mexico Supreme Court provided an answer to the certified question of law stating the similar coverages at issue were misleading, or illusory. *Crutcher v. Lib. Mut. Ins. Co.* 2022-NMSC-001, 501 P.3d 433.

On March 22, 2022, the Parties jointly requested that the Court stay the instant case pending the Parties' mediation before nationally recognized class action and insurance mediator Rodney Max of Upchurch Watson White & Max. (Dkt. 56). The Court granted the stay. To further settlement discussions, Allstate agreed to provide Plaintiffs with certain discovery, including data sampling regarding premiums/*Schmick* Offsets and a sampling of claims files.

On March 15, 2023, the Parties, through Rodney Max, engaged in good faith, arm's-length settlement negotiations. The Parties did not reach settlement at this first mediation session. However, the parties, through mediator Rod Max, continued negotiations and were able to come to a settlement agreement.

On April 17, 2023, the Parties filed a joint status report that notified the Court the parties mediation efforts were on-going and the parties were likely to come to a settlement soon. (Dkt. 70). The Court entered and order that continued the stay until the parties notified the Court of the parties' progress. (Dkt. 71). The Court entered an additional stay on May 8, 2023 to allow the parties to

continue negotiations. (Dkt. 73). On June 16, 2023, the parties submitted a joint status report and alerted the Court that the parties had reached a settlement on the substantial terms. (Dkt. 74). The Court preliminarily approved the class action settlement and entered the preliminary approval order on September 5, 2023 (Dkt. 83) and also set a final fairness hearing. (Dkt. 88).

Plaintiff, through her counsel, believes that the Settlement confers substantial benefits on the Settlement Class and is in the best interest of the Settlement Class. Plaintiff, through her counsel, believe that her claims have substantial merit. Nonetheless, Plaintiff, through her counsel, recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Allstate through motions practice, trial, and potential appeals. She has also considered the uncertain outcome and risks of further litigation, as well as the difficulties and delays inherent in such litigation. Plaintiff's counsel is experienced in insurance litigation and knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and specifically in this Action. Plaintiff's Counsel has determined that the Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

Allstate continues to deny each and all of Plaintiff's claims and allegations. Allstate denies all allegations of wrongdoing or liability. However, Allstate has concluded that further litigation would be protracted and expensive. Allstate has considered the uncertainty and risks inherent in any litigation, and Allstate has therefore determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

**I.     Final Approval of Settlement, Notice, Plan of Allocation and Attorney Fees and Administrative Costs.**

As demonstrated below, the Settlement is fair, adequate, and reasonable and, therefore, should be finally approved. Additionally, the Notice to the Class constituted fair and adequate

notice and constituted best practicable Notice under the circumstances, satisfying all requirements of due process and Fed. R. Civ. P. 23.

    **A.**    **Final Approval of the Settlement.**

Under Fed. R. Civ. P. 23(e), the trial court should approve a class action settlement under the circumstances set forth below, which are all present here.

In *Wells v. Best Buy, Co.(In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prods. Liab. Litig.)*, 997 F.3d 1077, ¶¶ 19-21 (10th Cir. May, 2021), the Tenth Circuit set forth the necessary findings:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D) (emphasis added). This court has further noted four factors for evaluation by a district court:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery

5

                              outweighs the mere possibility of future relief after protracted and expensive litigation; and

    (4)       the judgment of the parties that the settlement is fair and reasonable.

Examination of each factor above cited supports final approval of this Settlement.

    **1.       The Settlement Was Fairly and Honestly Negotiated.**

The first factor supports final approval, because the Settlement was fairly and honestly negotiated. When, as here, a settlement results from "arm's length negotiations between experienced counsel after significant discovery occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also, Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid."); *Marcus v. Kan. Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.")

The Settlement, here, was reached only after years of litigation, an all-day mediation and extensive arm's length negotiations between the parties after the mediation that lasted for several weeks. Plaintiff's counsel's was able to draw on experience from other cases involving insurance company practices, some similar to the issues presented in this case, in order to negotiate a complex settlement which provides significant benefits to class members. The Settlement affords potentially hundreds, if not thousands, of Class members a first or even a second opportunity to receive UM/UIM benefits for car accidents that might have resulted in serious injuries, for which they might not otherwise have a source of relief or additional relief. Without a Settlement, a Class member might not know of his or her right to assert a UM/UIM Coverage claim, or that a claim previously asserted and was not paid—even if he or she was represented by counsel. This is an enormous

benefit to the Class. Settlement class members who were not injured in a car crash have an opportunity to receive a portion of their premiums paid for UM/UIM coverage, to as far back as January 1, 2004. In addition the settlement provides other class members the opportunity to receive a partial reimbursement of UM/UIM premiums paid. This benefit is conferred to insureds subjected to an offset regardless of their level of UIM coverage and is not limited to only those insureds with minimum limits UIM coverage of $25,000/$50/000.According to the claims administrator's declaration, there were several fatalities confirmed by Defense Counsel, where the estates are eligible to receive a total of approximately $1,042,333.00. These automatic payments are separate from any valid and timely claims received by the Claims Administrator through February 5, 2024. See Exhibit 1 attached herewith, Declaration of Geary Godfrey Senior Project Manager, Epiq Class Action & Claims Solutions, Inc.

Additionally, according to the claims administrator, there are currently 64 claimants where Allstate previously reviewed the class member's claim for UIM coverage where the aggregate additional policy coverage limits potentially available for the Option 1 claimants' policies is currently estimated by Allstate to be $1.9 million. See Exhibit 1. Furthermore, there are 844 Settlement Class Members who have been identified within the Option 1 population in the Class List where additional information has been requested. Assuming a recovery of $25,000 limits for these claims, the estimated valuation of these Option 1 claims could be as much as $22,100,000. The exact amount of this valuation may increase if additional claims are approved under Option 1 or the limits are higher, or may be lower due to claims having no additional value to recover. Id. In this regard, it should be noted that due to a notice error identified by Class Counsel, class members who had a policy with Allstate and its Esurance products received proper notice and still have until May 1, 2024 to submit a claim which will be added to the already robust amount of claims received.

### 2. Questions of Law and Fact Exist, Making the Outcome of Litigation Uncertain Without Approval of the Settlement.

Questions of law and fact exist such that, absent the Settlement, the outcome of this case would be placed in doubt. "Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas*, 234 F.D.R. at 693-94 (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 at 284 (D. Colo. 1997)).

### 3. The Value of the Immediate Recovery Outweighs the Mere Possibility of Future Relief After Additional Litigation and Expense.

Because the immediate value of the Settlement benefits outweighs the complexity, uncertainty, expense, and likely duration of further litigation and appeals, the third factor also supports final approval of the proposed Settlement. "The class will be well- compensated . . . and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried and all appeals are exhausted." *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, at *13 (N.D. Okla. 2011). The Settlement is a significant and meaningful recovery for the Class and represents a very substantial percentage of the amount that could be recovered if litigated to the conclusion. Very few, if any, members of the class either did or would file individual litigation claims, especially without Plaintiff's counsel's successful prosecution of the parallel case, *Crutcher*, 18-cv-00412-JH, see also *Crutcher,* 2022-NMSC-001, after which the New Mexico Supreme Court found that a parallel carrier could be liable for policy language which misrepresented the impact of the *Schmick* offset, or failed to adequately disclose it, the legal predicate of the same claims made in this case. As a result, and benefit of what happened in *Crutcher*, almost all auto insurance carriers in New Mexico sent out notices to their insureds attempting to rectify the issues identified by the New Mexico Supreme Court and begin

a dialogue about the costs of, and limitations or exclusions to, underinsured motorist benefits.

4. **The Settling Parties Agree the Proposed Settlement Is Fair, Reasonable and Adequate.**

Finally, the Settling Parties and their Counsel have signed the Settlement, indicating their belief that the Settlement is fair, adequate, and reasonable. "Counsels' judgment as the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (quoting *Marcus*, 209 F. Supp. 2d at 1183). "[T]he Court should . . . 'defer to the judgment of experienced counsel who has competently evaluated the strength of his proof.'" *Johnson v. City of Tulsa*, No. 94-CV-39-H(M), 2003 WL 24015151. *11 (N.D. Okla. May 13, 2003). As such, the fourth factor – that the settling parties agree the settlement is fair, adequate, and reasonable – supports final approval. In the event the parties find there are claim determinations which are disputed, they will ask the Court to authorize the appointment of a Neutral evaluator.

5. **The Class Overwhelmingly Supports the Settlement.**

The lack of any objections and the recognition of only 6 opt-outs representing approximately 1/1,000th of a percent interest in the Class also supports the Settlement. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3rd Cir. 1990) (Objections by only 10 percent of the class "strongly favors settlement"); *see also, Mohammed v. Ells*, 2014 WL 4212687 at *4 (D. Colo. August 26, 2014) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2nd Cir. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2nd Cir. 2000) (Where 27,883 notices were sent to class members, but only 72 class members requested exclusion from the settlement and only 18 class members objected, court stated that "this small number of objections weigh[s] in favor of the settlement"). Here, only 6 Class Members submitted timely opt out request and no objections were received after 643,082 Notices were mailed and emailed. See

Exhibit 1. 4,180 Valid Claim Forms were received and are still being received and processed by the claims administrator, and, for Esurance class members, they still have until May 1, 2023 remaining for claims to be filed. Id. Therefore, the Settlement has received overwhelming support from the Class.

### B.   Final Approval of the Form, Content, and Manner of Notice to the Class.

The form, content, and manner of the Notice to the Class also should be finally approved. Fed. R. Civ. P. 23(e)(1) requires that notice of a settlement be "in a reasonable manner to all class members . . .".

In terms of content, a settlement notice need be reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of the proposed settlement and to afford them an opportunity to present their objections. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry is reasonableness." *Lucas*, 234 F.R.D. at 693-96.

In the Preliminary Approval Order (Dkt. ), the Court approved the Notice of Proposed Settlement of Class Action (the "Notice"). The Court appointed Epiq as Class Administrator. Doc. 66. Epiq was the entity retained by the Parties to act as the administrator in connection with this proposed settlement and as the authorized agent to effect mailing of the Notice of Class Action and Proposed Settlement (the "Notice") to members of the Class, and to allocate and disburse funds. All names and addresses of the Class were provided by the Defendant. Pursuant to the Preliminary Approval Order entered by this Court on March 3, 2023 [Doc. 66], the Class Administrator emailed and mailed copies of the Notice by first-class mail to each of the potential Class Members. The Class Notice was mailed as directed. See Exhibit 1. New addresses or new names and addresses were found for several Members or potential Members of the Class through the efforts described in the declaration. Id. The potential Class List was updated with these new addresses.

As noted above Class Counsel identified a notice error related to class members who had a policy with Allstate and its Esurance products. After identifying this error Defendants agreed to promptly remedy the notices and provide additional time for these class members to submit claims, opt out notices, or objections.

The efforts of Class Counsel and Defendants to locate Class Members, or potential Class Members, who were subject to a "returned envelope" Notice can be described as a "skip trace" procedure. The Class Member List was updated with any new addresses and names so determined. New Notices were then mailed to all newly identified, potential Class Members using the new addresses. As the Administrator's Declaration confirms, the reach of this Notice was extremely broad, and there were only a minuscule number of undeliverable notices. Id.

### C. Final Approval of Attorney Fees and Administrative Costs and Class Representative Incentive Awards.

This issue is presented in other pleadings before the Court. *See* Plaintiff's Motion for Attorney Fees, Costs, and Incentive Award and Memorandum in Support Thereof. No Class Member objected to the proposed attorney's fees, litigation expenses, and incentive awards as stated in the Notice. For all reasons set forth herein, Class Counsel moves the Court to approve and award the requested attorney's fees, and class representatives' incentive fees.

## II. Conclusion.

For the foregoing reasons, and pursuant to the findings recently set forth in *Wells v. Best Buy, Co.*, 997 F.3d 1077, ¶¶ 19-21 (10th Cir. May, 2021), the Class Representative, Yvonne Belanger, respectfully request the Court enter a Final Order and Judgment, which (1) grants final approval of the proposed Settlement as fair, adequate and reasonable; (2) approves the form, content, and manner of the Settlement Class Notice; (3) approves attorney's fees and named Plaintiffs' incentive award; and (4) grants any other relief the Court deems just and proper.

Respectfully submitted,

/s/ *Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 407-2088
Fax: 505 709-3279
Kedar@bhaskerlaw.com

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 998-6626
Fax: 505 336-7743
corbin@hildebrandtlawnm.com

Geoffrey Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@geoffromerolaw.com

*Counsel for the Plaintiff*