**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

YVONNE BELANGER, individually and
on behalf of other similarly situated individuals,

        Plaintiff,

        vs.                           Civ. No. 19-317 WJ/SCY

ALLSTATE FIRE AND CASUALTY INSURANCE
COMPANY; ALLSTATE INDEMNITY
INSURANCE COMPANY; ALLSTATE
INSURANCE COMPANY; and ALLSTATE
PROPERTY AND CASUALTY INSURANCE
COMPANY,
        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

On September 5, 2023, the Honorable William P. Johnson preliminarily approved

settlement of this class action lawsuit and referred the final fairness hearing to me. Doc. 83. On

March 26, 2024, I held the final fairness hearing (Doc. 98) and now enter this Proposed Findings

and Recommended Disposition ("PFRD") as to the parties' unopposed Motion for Final

Approval of Class Settlement (Doc. 96).[1] As discussed at the March 26 hearing, *see* Doc. 102

(hearing transcript), I recommend that the Court grant the motion and make the following

findings as to the class action settlement.

### PROCEDURAL HISTORY

Plaintiff filed this class action complaint on January 29, 2019 in New Mexico state court,

Doc. 1-4 at 1, and filed a First Amended Class Action Complaint on February 13, 2019, Doc. 1-

2. In the first amended complaint, Plaintiff alleged that Allstate failed to inform her that the

---

[1] Also pending before the Court is the Unopposed Motion for Award of Attorneys' Fees, Costs,
and Award of Incentive Fee to Named Plaintiff (Doc. 97), which I will address in a subsequent
PFRD.

$25,000 minimum-limits underinsured motorist ("UIM") coverage she was paying a premium for was illusory, given the *Schmick* offset. Doc. 1-2. After Plaintiff sustained injuries in a collision with an underinsured motorist, Allstate denied her claim because the tortfeasor's liability coverage limits equaled her UIM coverage limits. *Id.* Plaintiff defined the class as:

> All persons (and their heirs, executors, administrators, successors, and assigns) from whom Allstate collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Allstate and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorist coverage and/or misleading underinsured coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

*Id.* ¶ 48. Plaintiff's first amended complaint alleged nine counts: negligence, violations of the New Mexico Unfair Trade Practices Act, violations of the New Mexico Unfair Insurance Practices Act, reformation of insurance policy, breach of covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation, declaratory judgment, and injunctive relief. *Id.*

Defendants removed the case to federal court on April 4, 2019, citing the Class Action Fairness Act. Doc. 1. Shortly thereafter, Defendants moved to stay the case, pending resolution of a related question of law that had been certified to the New Mexico Supreme Court in *Crutcher v. Liberty Mutual Insurance Company*. Doc. 26. The certified question was:

> Under NMSA 1978, § 66-5-301 (1983), is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Id.* at 1. On June 18, 2019, the Court granted the motion to stay, finding that the answer to the *Crutcher* certified question may resolve substantial issues in this case. Doc. 33. On October 4, 2021, the New Mexico Supreme Court answered the certified question, holding that,

> UM/UIM coverage at the minimum level is permitted because the law not only allows, but requires, it to be sold as was done so here. However, such coverage is illusory because it is misleading to the average policyholder. As such, we will now require every insurer to adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy. If the insurer provides adequate disclosure, it may lawfully charge a premium for such coverage.

*Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33, 501 P.3d 433, 441.

On December 14, 2021, the Court lifted the stay, Doc. 38, and set a scheduling conference, Doc. 39. Plaintiff also filed a second amended complaint, alleging the same class definition and same counts as the first amended complaint. Doc. 40. Defendants responded with a motion to dismiss, arguing that their policies properly inform insureds of the amounts payable under UIM coverage and that the *Crutcher* additional disclosure requirement only applies prospectively, not retrospectively. Doc. 42. At the request of the parties, the Court stayed entry of a scheduling order while the motion to dismiss was pending. Doc. 44. On March 2, 2022, the Court granted the motion to dismiss as to Plaintiff's claims for negligence and unjust enrichment, but denied the motion as to all other claims. Doc. 52. In doing so, the Court held that "the presumption of retroactive application has not been overcome and therefore, *Crutcher* does not provide Defendants with immunity for misrepresentation claims which arose pre-*Crutcher* and does not mandate dismissal of Plaintiff's claims." *Id.* at 11.

Following the Order on the motion to dismiss, the parties began settlement discussions, including informally exchanging discovery necessary for such negotiations, and so the Court further stayed entry of a formal scheduling order. *See* Docs. 56, 58, 59, 61, 63, 66. The parties participated in a mediation on March 15, 2023, and continued negotiations until they finalized the settlement and, on August 22, 2023, moved for preliminary approval of the settlement. Docs. 70, 72, 74, 76, 81, 82. On September 5, 2023, the Honorable William P. Johnson preliminarily approved settlement of this class action lawsuit and referred the final fairness hearing to me.

Docs. 83, 84. After conferring with the parties, I set the final fairness hearing for February 15, 2024. Doc. 87. However, the parties later sought to move the date of the final fairness hearing after a portion of the class was not sent notice due to a coding error and the parties needed additional time to provide supplemental notice. Doc. 90. I thus reset the final fairness hearing to March 26, 2024. Doc. 94.

## RECOMMENDED FINDINGS

First, I recommend that the Court finally certify the class for settlement purposes. As preliminarily approved, the settlement class should be certified as:

> All Allstate Companies' policyholders and insureds (and their heirs, executors, administrators, successors and assigns) between January 1, 2004 and July 11, 2022 who (a) resided in New Mexico and (b) purchased an insurance policy with Uninsured ("UM")/Underinsured ("UIM") coverage, and/or (c) any non-Allstate policyholder insured who made a claim for UIM benefits and had benefits reduced or denied due to the offset described in *Schmick v. State Farm Mutual Automobile Insurance Co*., 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092 (the "*Schmick* Offset").

Excluded from the Settlement Class are: 1) any claimant who has separately filed suit against Allstate up to the Notice Date, the subject of which suit includes the reduction or denial of benefits on the basis of a *Schmick* Offset (unless such claimant elects to submit a claim under this settlement and dismisses their separately filed suit against Allstate); 2) any individual who has settled a claim for benefits reduced or denied on the basis of a *Schmick* Offset, whose claim was adjusted or readjusted without applying a *Schmick* Offset, and signed a final release prior to the Notice Date; 3) any claimant for whom, at claimant's request, Allstate has already re-adjusted a claim for benefits reduced or denied on the basis of the *Schmick* Offset prior to the Notice Date; 4) the Judge(s) presiding over this Action; and 5) Allstate and any employee of Allstate.

I recommend finding that the requirements under Federal Rule of Civil Procedure 23(a) are satisfied as to the settlement class because the named Plaintiff possesses standing; the proposed settlement class is adequately defined and ascertainable; the class is sufficiently numerous that joinder of all settlement class members is impracticable, there are questions of law and fact common to the settlement class, and Plaintiff's claims are typical of the settlement class; and both Plaintiff and class counsel are adequate representatives of the settlement class and have fairly and adequately protected the interests of the settlement class. Doc. 102 at 60:21 to 61:5. Additionally, I recommend finding that the settlement class is certifiable under Rule 23(b)(3) because common issues predominate over individual issues and class treatment is superior to other alternatives for adjudicating the claims at issue. Doc. 102 at 36:21 to 38:11; 61:6-20.

Second, under Rule 23(e)(2), I recommend that Court grant final approval of the proposed settlement as fair, adequate, and reasonable. The settlement was fairly and honestly negotiated and was entered into in good faith following arm's length negotiations that included an all-day mediation with a neutral mediator and continued negotiations after the mediation. Doc. 102 at 55:3-9. The parties faced significant risks, expenses, delays, and uncertainties with continued litigation due to serious questions of law and fact, including issues of retroactivity and the statute of limitations. *Id.* at 55:13-21, 60:22 to 61:3. This is especially apparent given that the issues in this case are being litigated against multiple different insurers, all with varying arguments and outcomes. *Id.* at 50:15-21. The settlement is in the best interest of the settlement class as the value of immediate recovery outweigh the possibility of future relief after additional litigation and expense, specifically taking into account the uncertainty and the delay caused by issue of *Crutcher* retroactivity that is pending before the New Mexico Supreme Court. *Id.* at 50:22 to 51:19, 55:13 to 56:17. The parties have proposed an effective method of distribution for

a significant value of damages to the class members, by dividing the class into those who will receive a refund for premiums and those who will have claims adjusted or readjusted. *Id.* at 33:15 to 35:9, 38:20 to 39:18, 60:4-13. Additionally, the settlement treats class members equitably relative to each other.[2]

Third, I recommend that the Court approve the form, content, and manner of the settlement class notice because it complies with both the Federal Rules and due process. Doc. 102 at 8:3-17. The notice plan and class notice, as laid out in the Order Granting Preliminary Approval (Docs. 83, 82-1 at 44-60) constitutes the best notice practicable under the circumstances, and constitute valid, due, and sufficient notice to members of the settlement class. Epiq emailed notice to all class members for whom an email address was available, including at least two round of reminder emails, with a delivery rate of 88%. Doc. 96-1 ¶¶ 7-9; Doc. 102 at 26:4-9. This delivery rate includes those emails that were actually received by the server; emails that were bounced into a spam folder (i.e., a soft bounce) were returned to Epiq as undelivered and replaced by mail notice. Doc. 102 at 22:23 to 23:3, 24:11 to 25:5. Epiq sent notice by first class mail to all who did not receive notice by email, either because Epiq had no email address for the person or because email notice was undeliverable, with a 76% delivery rate. Doc. 96-1 ¶ 10, 13; Doc. 102 at 25:11-18, 26:4 to 27:2.

Notice to the class potentially contained three errors regarding the final fairness hearing date. First, a notice attached to the declaration of the Epiq Project Manager lists the hearing date

---

[2] Although those with wrongful death claims are being automatically readjusted while those with severe injury claims are required to submit a claim, this is done in accordance with the standard adjustment process as wrongful death claims are apparent and injury claims require more information to determine the amount of damages, even if they involve a severe injury. Doc. 102 at 41:9 to 42:18. Additionally, a group of settlement class members, those with claims from 2004 to 2010, may receive a lesser amount based on a statute of limitation defense. *Id.* at 43:8-13.

as January 8, 2024, when the hearing was originally set for February 15, 2024. Doc. 102 at 8:19

to 9:7; *see also* Doc. 96-1 at 21. Second, another version of the notice lists the hearing date as

March XX, 2024. Doc. 102 at 9:8-15; *see also* Doc. 96-1 at 24. Lastly, the final fairness hearing

was originally set for February 15, 2024 but, because of some errors with the class list, the

parties needed additional time and so the hearing was moved to March 26, 2024 without further

physical notice to the class. Doc. 102 at 9:19-23, 11:9-22.

    These issues, however, are not fatal to the sufficiency of the notice. First, the Court

previously approved rescheduling the final fairness hearing without further notice to the class.

Doc. 83 (order granting preliminary approval, finding that "[t]he Final Approval Hearing may be

postponed, adjourned or rescheduled by order of the Court without further notice to the Members

of the Settlement Class, other than that which may be posted at the Court and on the Court's

website"). Second, no class member reached out the clerk's office to receive the information of

the Zoom hearing, as specified in the notice of hearing (Doc. 87), in advance of either the

January or February date, or at another other time. Doc. 102 at 10:16 to 11:6. And, if they had,

they would have been provided the connection information and the correct hearing date. Lastly,

the claims administrator established a website for the settlement, with the address for the website

included in the notice to the class, and the website contained the correct hearing date. *Id.* at 12:18

to 13:2, 13:16-18.

    As to the contents of the notice, the mailed class notice included a section in Spanish

directing members to the website or to a phone number to receive information in Spanish. Doc.

9-1 at 23; Doc. 102 at 30:11-16. The telephonic number on the website takes the caller to an

Interactive Voice Response—an automated telephone answering service that allows the caller to

receive information in Spanish. *Id.* at 28:23 to 29:6, 30:1-4. The website also has a "documents"

tab which includes copies of the long form notice and claim form in Spanish. Doc. 102 at 29:17-24. Thus, the notice adequately addressed communication issues Spanish speaking residents of New Mexico might have.

In addition to the required notice to class members, 28 U.S.C. § 1715 requires notice of information regarding the settlement to the appropriate State and Federal official. 28 U.S.C. § 1715(b) ("Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of . . ." information about the class action, the settlement, and upcoming proceedings). Defendants have complied with § 1715's notice requirements. Doc. 102 at 31:24 to 32:14.

Fourth, I recommend that Epiq Class Action & Claims Solutions be appointed as the third-party class administrator. *Id.* at 63:1-10. I recommend that the parties, their attorneys, and the claims administrator, be ordered to implement the settlement in accordance with the terms of the settlement agreement.

Lastly, given that there are no objections to the proposed settlement,[3] I recommend that the Court find that the settlement, settlement agreement (Doc. 82-1), and a subsequent final judgment are binding as to all class members except the six people who submitted timely opt-out

---

[3] No class member reached out to the clerk's office, seeking information on the final fairness hearing in order to be heard and Plaintiff's counsel, Defendants' counsel, and the claims administrator for Epiq all confirmed at the hearing that there were no objectors or any class members wishing to be heard at the hearing. Doc. 102 at 4:4-25. Plaintiff's counsel and Defendants' counsel also confirmed there were no side agreement made with objectors and no undeclared objectors. *Id.* at 5:1-13.

requests.[4] Doc. 102 at 62:11-20. If the Court adopts this PFRD, and the subsequent PFRD on attorneys' fees, all claims in this action, as well as the action itself, should be dismissed in their entirety, with prejudice and without leave to amend.[5] *Id.* at 62:21-25.


_____
Steven C. Yarbrough
United States Magistrate Judge


**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**


_____

[4] Class members were given the option to opt-out by mail or online. Doc. 102 at 15:16-18, 17:17-22.

[5] Although this settlement does not address the injunction issue that was alive following *Crutcher*, that issue has been resolved as the Superintendent of Insurance has issued a bulletin requiring all insurers to incorporate the notice regarding offsets and premiums charged for UIM coverage. Doc. 102 at 58:16 to 59:15.